On March 13, 1997, Brenda A. Medley was indicted by a Franklin County grand jury on five felonies of the fifth degree: three counts of forgery, in violation of R.C. 2913.31; one count of receiving stolen property, in violation of R.C.2913.51; and one count of possessing criminal tools, in violation of R.C. 2923.24. The charges arose as a result of an event in November 1996 during which Ms. Medley allegedly attempted to use a credit card belonging to Mary Cambert to purchase merchandise at a Columbus Toys R Us store.
A jury trial commenced February 17, 1998. At the close of the state's case, the trial court granted a Crim.R. 29 motion for judgment of acquittal as to the three forgery counts. Overruling the motion as to the remaining counts, the court submitted the receiving stolen property and possessing criminal tools charges to the jury. The jury ultimately returned guilty verdicts on these counts. The acquittals and convictions were journalized pursuant to a "corrected judgment entry" filed April 30, 1998.
Brenda A. Medley (hereinafter "appellant") has timely appealed, assigning two errors for our consideration:
 "FIRST ASSIGNMENT OF ERROR: Appellant's convictions were not supported by the evidence and were against the manifest weight of the evidence.
 "SECOND ASSIGNMENT OF ERROR: The court erroneously overruled appellant's motions for acquittal pursuant to Criminal Rule 29."
By her first assignment of error, appellant contends that her convictions for receiving stolen property and possessing criminal tools were both unsupported by sufficient evidence and were against the manifest weight of the evidence. In an argument raising identical sufficiency issues, appellant submits in her second assignment of error that the trial court erred in overruling her Crim.R. 29 motions for acquittal as to these charges. Because they are interrelated, we address these arguments jointly.
Before addressing the facts of this case, we first address the standards by which we are bound in our review.
In State v. Thompkins (1997), 78 Ohio St.3d 380, the Supreme Court of Ohio clarified that the legal concepts of sufficiency of the evidence and weight of the evidence are not synonymous legal concepts, stating that the two are "both quantitatively and qualitatively different." Id., paragraph two of the syllabus. The court explained at length the standards to be applied by an appellate court upon review of the respective claims. The court explained the "sufficiency" concept as follows:
 "* * * ' "[S]ufficiency" is a term of art meaning that legal standard which is applied to determine whether the case may go to the jury or whether the evidence is legally sufficient to support the jury verdict as a matter of law.' Black's Law Dictionary (6 Ed. 1990) 1433. See, also, Crim.R. 29(A) (motion for judgment of acquittal can be granted by the trial court if the evidence is insufficient to sustain a conviction). In essence, sufficiency is a test of adequacy. Whether the evidence is legally sufficient to sustain a verdict is a question of law. State v. Robinson
(1955), 162 Ohio St. 486 * * *. In addition, a conviction based on legally insufficient evidence constitutes a denial of due process. Tibbs v. Florida (1982), 457 U.S. 31, 45, * * * citing Jackson v. Virginia (1979), 443 U.S. 307 * * *." Thompkins at 386-387.
In State v. Jenks (1991), 61 Ohio St.3d 259, at paragraph two of the syllabus, the Supreme Court of Ohio explained the appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction:
 "An appellate court's function * * * is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt."
If an appellate court determines that a trial court's judgment is sustained by sufficient evidence, theThompkins court explains that the court may nevertheless conclude that a judgment is against the manifest weight of the evidence:
 "* * * Weight of the evidence concerns 'the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other. It indicates clearly to the jury that the party having the burden of proof will be entitled to their verdict, if, on weighing the evidence in their minds, they shall find the greater amount of credible evidence
sustains the issue which is to be established before them. Weight is not a question of mathematics, but depends on its effect in inducing belief.' (Emphasis added.) Black's, supra, at 1594.
 "When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a ' "thirteenth juror" ' and disagrees with the factfinder's resolution of the conflicting testimony. Tibbs, 457 U.S. at 42. * * * See, also, State v. Martin (1983), 20 Ohio App.3d 172, 175 * * *. ('The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. * * *" Thompkins at 387.
See, also, State v. DeHass (1967), 10 Ohio St.2d 230.
Preliminarily, we set forth the elements of the offenses with which appellant was charged in order to evaluate whether her convictions for same were supported by sufficient evidence, i.e. whether the record, construed in a light most favorable to the prosecution, supports a finding that a rational trier of fact could have found the essential elements of receiving stolen property and possessing criminal tools.
"Receiving stolen property" is proscribed by R.C.2913.51(A), in pertinent part, as follows:
 "No person shall receive, retain, or dispose of property of another knowing or having reasonable cause to believe that the property has been obtained through commission of a theft offense."
The elements of "possessing criminal tools" are set forth in R.C. 2923.24(A):
 "No person shall possess or have under the person's control any substance, device, instrument, or article, with purpose to use it criminally."
With respect to "purpose," R.C. 2923.24(B) provides, as relevant here, that the following "constitutes prima-facie evidence of criminal purpose":
 "(3) Possession or control of any substance, device, instrument, or article commonly used for criminal purposes, under circumstances indicating the item is intended for criminal use."
The indictment here specifically alleged that appellant possessed the credit card with purpose to use it criminally, and the "circumstances indicated that" the credit card "was intended for use in the commission of a felony, to wit: Forgery and/or Receiving Stolen Property."
On November 18, 1996, a woman identified as appellant attempted to purchase a series of items at a Toys R Us store in north Columbus. The woman presented an American Express card belonging to Mary Cambert to pay for the purchases. The sales clerk became suspicious of the transaction and contacted a store manager.
The store manager, Vicki Peppard, approached the customer and asked for the credit card and a drivers license for identification. The customer denied having a driver's license with her, but provided the credit card. The customer then left the building.
When Ms. Peppard called American Express, American Express refused to grant authorization for the purchases, but told Ms. Peppard to return the credit card to the customer and retrieve the merchandise. Ms. Peppard found the customer in the parking lot, returned the American Express card and retrieved the Toys R Us merchandise.
After returning the merchandise, the customer apparently attempted to conceal her identity by getting into a car other than her own. The customer first tried to get into a car owned by Ms. Peppard, then into a car owned by another Toys R Us employee. Finally, the customer entered a black Chevrolet Cavalier and left.
Ms. Peppard called police and reported the happenings. Ms. Peppard also reported the license number for the Chevrolet Cavalier. The car was registered to appellant Brenda A. Medley. Ms. Peppard picked appellant's photographs out of a photo array as being the customer she encountered on November 28, 1996. Ms. Peppard also identified appellant in open court. The sales clerk made similar identification.
Mary Cambert testified at trial that she had used her American Express card several days before November 18, 1996, but had looked for the card the weekend before November 18, 1996 and had been unable to find it. Ms. Cambert looked for the card again on the evening of November 18, 1996 after being contacted by American Express and still was unable to find it. Ms. Cambert denied using the card on November 18, 1996 and denied authorizing anyone else to use the card.
The testimony before the trial court clearly was sufficient to support a finding that appellant was the woman who attempted to use Mary Cambert's American Express card to purchase items at the Toys R Us store. A finding that appellant was the perpetrator was also in accord with the weight of the evidence. The credit card was used as a part of and in conjunction with a series of forgeries to acquire property to which appellant was not entitled. As a result, the evidence establishes that appellant attempted to use the credit card criminally. In other words, appellant was clearly shown to be guilty of possessing criminal tools in violation of R.C. 2923.24(A).
Appellant was also shown to have received and retained the American Express card, which was the "property of another" for purposes of R.C. 2913.51(A), "receiving stolen property." The remaining elements of the statute require a showing that the credit card had been "obtained through the commission of a theft offense."
Mary Cambert could not say whether she lost the American Express card or the card was stolen. In fact, no testimony demonstrated that the credit card was ever stolen, only that appellant tried to use the card illegally after coming into possession of it and accepted possession of the card again after the card had been used in an attempt to get the merchandise from Toys R Us. We are not presented with the typical receiving stolen property situation when an item is known to have been stolen and the thief or someone else who knows the property is stolen later is found in possession of the item. Nor are we presented with any other theft offense theory which is supported by the evidence. The element of receiving stolen property that the credit card had been obtained through the commission of a theft offense was not demonstrated at trial.
As a result, we overrule the two assignments of error insofar as they pertain to the offense of possessing criminal tools. However, we sustain the two assignments of error insofar as they pertain to the offense of receiving stolen property. We, therefore, reverse the receiving stolen property conviction and remand the case with instructions to enter a judgment of acquittal as to the receiving stolen property charge. We affirm the conviction and sentence as to the offense of possessing criminal tools.
Judgment affirmed in part and reversed in part, and causeremanded with instructions.
LAZARUS, P.J., and PETREE, J., concur.